IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DARRIAN DANIELS, #K91046,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21−cv−00051−NJR |
| | ) | |
| **JOSHUA SCHOEKBECK,** | ) | |
| **ANTHONY WILLS,** | ) | |
| **ANTHONY JONES,** | ) | |
| **EDWIN GLADNEY, and** | ) | |
| **CURTIS DALLAS,** | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights. Daniels claims he was charged and disciplined unjustly, resulting in placement in segregation in the North 2 cellhouse. Daniels contends that his conditions of confinement are deplorable and that he is being denied appropriate accommodations for his alleged hearing loss. Daniels is proceeding on an Eighth Amendment claim against Anthony Wills, Menard's Warden, for exhibiting deliberate indifference to his conditions of confinement (Count 1) and three Fourteenth Amendment due process claims against the remaining defendants for their role in Daniels's disciplinary convictions (Counts 2-4).

Along with the Complaint, Daniels filed a Motion for Preliminary Injunction

and/or TRO (Doc. 4), asking the Court to issue an order requiring Menard officials to remove him from the North 2 cellhouse and place him in housing that can accommodate his alleged ADA disability of deafness.[1] On January 15, 2021, the Court denied Daniels's request for a temporary restraining order but ordered Defendant Wills to file a response to the request for a preliminary injunction. Wills then filed a response in opposition to the motion (Docs. 17, 27), and Daniels filed a reply (Doc. 22). The Court held a hearing on the motion on May 6, 2021.

## BACKGROUND[2]

Daniels is housed in segregation in North 2. Officials have attempted to move him to the East cellhouse where cells are larger and Daniels would have a cellmate, but Daniels has refused housing. Daniels contends that the East cellhouse houses the most dangerous inmates, including those who are seriously mentally ill. Daniels is concerned that if he is transferred to the East cellhouse, he will be assigned to a cell with a seriously mentally ill inmate, placing his life in danger. Defendant contends that Daniels's concerns about the East cellhouse are speculative and states that Daniels will only be paired with a cellmate once appropriate evaluations have been completed. Defendant also contends that Daniels cannot be transferred to general population because he has been refusing TB testing for years and refuses bi-weekly COVID 19 testing. As a result, Daniels's housing options are limited.

---

[1] The Court takes judicial notice that Daniels already has a pending case in this District regarding medical treatment for his hearing, *Daniels v Lawrence*, 20-cv-96-DWD.
[2] This information is taken from Daniels's preliminary injunction motion (Doc. 4), Defendant's response in opposition and supporting documentation (Docs. 17 and 27), and Daniels's reply (Doc. 22).

As to his current conditions of confinement, Daniels contends that the cells in North 2 are too small, lack proper ventilation, and are subject to extreme temperatures. He also claims that he is confined to his cell 24-hours a day and is often denied access to yard and showers. According to Daniels, these conditions are causing physical and mental harm. Daniels also claims that he is deaf and is not receiving proper medical treatment for or access to ADA programs for his hearing loss.

Defendant has provided medical and mental health records revealing that Daniels has not been complaining about or seeking treatment for his alleged physical and mental health conditions. Defendant also has provided declarations regarding the cell conditions in North 2, Daniels's movement outside of his cell, and Daniels's history of declining opportunities to leave his cell and/or refusal to be tested for communicable diseases (further limiting his movement within the facility).

As to Daniels's alleged hearing loss, Defendant admits that Daniels was previously listed as an ADA eligible inmate due to his hearing loss. This categorization, however, was based on Daniels's self-reported loss of hearing. In January 2021, Daniels was examined by an outside specialist at the Division of Audiology at St. Louis University School of Medicine. According to medical records provided by Defendant, the specialist concluded that Daniels was suffering from "normal to mild" hearing loss and/or "functional" hearing loss. He recommended that Daniels follow-up with an ENT and did not recommend any additional follow-up with audiology. According to Defendant, this means that Daniels does not have hearing loss that requires amplification and does not qualify as an ADA offender.

In his reply, Daniels contends that officials at Menard have a history of falsifying his medical records. He claims that various filings in other cases he is pursuing in the Southern District of Illinois establish that his records have been falsified or that he is suffering from significant hearing loss. The pleadings Daniels refers to, however, are not dispositive—they simply demonstrate that Daniels has made similar claims in other cases or that the Court has previously allowed Daniels to proceed on claims pertaining to his alleged hearing loss.

## EVIDENTIARY HEARING

The recent hearing was conducted via video-conference. Prior to the hearing, Daniels filed a Motion for Communication Assistance (Doc. 32), claiming that his hearing loss is so severe he would be unable to participate in the hearing without a listening device such as a hearing aid. Accordingly, at Daniels's request, the Court arranged for Daniels to have access to real-time transcription of the proceedings.

During the hearing, Daniels reiterated his claims regarding his alleged medical and mental health issues. Daniels testified that he has reported his medical issues to a nurse and to Dr. Siddiqui to no avail. He further testified that there is no record of him seeking treatment for any of his alleged medical issues because officials at Menard have been falsifying his medical records. When questioned about the report from the audiologist at St. Louis University School of Medicine, indicating that he has functional or minimal hearing loss, Daniels claimed that, like the officials at Menard, the outside specialist is lying.

Defendant offered testimony from Angela Crain, the healthcare unit administrator

at Menard, and Major Trevor Rowland, a correctional officer at Menard. Crain testified that medical and mental health staff regularly make rounds in Daniels's housing unit. Other than a complaint regarding wrist pain, however, Daniels's medical records reflect that he has reported no medical complaints to these officials. Crain further testified that Daniels was scheduled for a visit with the physician for his complaint about wrist pain, but he refused to leave his cell to attend that appointment. Daniels was also scheduled for a visit with the nurse practitioner regarding his continued refusal for TB testing but refused to leave his cell. Major Rowland testified that Daniels is offered showers three times a week and yard on a weekly or daily basis (depending on COVID restrictions), but Daniels regularly refuses to leave his cell. Daniels also testified that he has observed Daniels interacting with other inmates in the gallery, and that he regularly responds to other offenders' verbal remarks.

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

The Court cannot conclude here that Daniels has a reasonable likelihood of success on the merits. The medical records and declarations submitted by Defendant, as well as the credible testimony from Crain and Major Rowland, contradict Daniels's claims. Daniels's medical records do not indicate that he is suffering from headaches, musculoskeletal pain, depression, or any other untreated medical condition. Further, evidence offered by Defendant indicates that Daniels is offered opportunities to leave his cell on a regular basis but refuses to do so.

The Court finds that Daniels's testimony on these issues is not credible. It defies common sense to believe that all of Daniels's medical records—including medical records submitted by an outside specialist—have been falsified. Moreover, Daniels's conduct during the hearing refutes any claim that he is suffering from clinically significant hearing loss. Daniels frequently responded to direction from the Court before the Court's statements had been transcribed. In addition, Daniels often responded physically to witness testimony (shaking his head in disagreement) before the testimony had been transcribed and, at times, asked follow-up questions before the testimony had been transcribed.

After considering the parties' briefing and the relevant testimony, the Court finds that Daniels cannot establish a reasonable likelihood of success on the merits. And to the extent he could succeed on the merits, he has an adequate remedy at law. There is likewise no evidence that Daniels will suffer irreparable harm absent preliminary injunctive relief.

## CONCLUSION

Accordingly, Daniels's Motion for Preliminary Injunction (Doc. 4) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** May 12, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**